COMMONWEALTH *vs.* PIERRE A. ROBINSON.

Suffolk.  May 3, 1988. — August 4, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arrest. Probable Cause. Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause.

In a criminal case, the judge erred in allowing a motion to suppress cocaine and paraphernalia found on the defendant's person when arrested on the basis of an informant's tip that the defendant was carrying cocaine, where the informant's reliability was established and where, in the absence of information showing the basis of the informant's knowledge, the requirements for probable cause to arrest were satisfied by the police officers' corroboration, by observation, of the details of the informant's description of the defendant's appearance and clothing and of the informant's prediction of the time and place of the defendant's arrival from New York City on a bus. [164-166]

INDICTMENT found and returned in the Superior Court Department on November 10, 1986.

A motion to suppress evidence was heard by *John F. Murphy, Jr.,* J.

An application for an interlocutory appeal was granted by *Nolan,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

The case was submitted on briefs.

*Newman Flanagan,* District Attorney, *Kevin J. Ross & Lynn M. Beland,* Assistant District Attorneys, for the Commonwealth.

*Stephen Hrones* for the defendant.

ABRAMS, J. At issue is the correctness of an order allowing the defendant's motion to suppress evidence seized from the defendant's person. The Commonwealth applied to a single justice for leave to appeal. See Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979). The single justice allowed the Commonwealth's application and transferred the case to this court. We reverse the order allowing the defendant's motion to suppress.

We summarize the facts as found by the motion judge. At approximately 4 A.M., on September 5, 1986, Detective Robert Tully, of the Boston police department's drug control unit, received a telephone call at his home from an informant. On previous occasions, this informant had supplied Tully with information that had led to approximately twenty-five arrests and fifteen convictions in connection with cocaine and heroin trafficking. The informant told Tully that a twenty-year-old black male would be arriving at the Greyhound bus station at about 5 or 5:30 A.M.,[1] on the bus from New York City and that the man would be carrying a large amount of cocaine. The informant described the man as being approximately six feet tall and wearing a black windbreaker with a white stripe, dark pants, and a black T-shirt with an anti-drug slogan printed on it. Tully telephoned his superior officer and his partner and then proceeded to the bus station.

The bus from New York was late arriving in Boston. When it did arrive, Tully and his partner observed the defendant, who fit the informant's description, disembark from the bus, walk through the terminal, and hail a taxicab on the street. As the defendant opened the taxicab door, the police officers placed him under arrest. A search of the defendant's person uncovered 148 vials containing "crack" cocaine, two bags of rock cocaine, and 400 empty vials. With these facts in mind, we turn to the Commonwealth's contention that the motion judge erroneously granted the defendant's motion to suppress the seized evidence.

To comport with art. 14 of the Massachusetts Declaration of Rights, an arrest and search executed in response to an informant's tip must meet the two-pronged standard of probable cause set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). We require the Commonwealth to demonstrate (1) some underlying cir-

---

[1] Although the judge found that the bus was scheduled to arrive between 5 and 5:30 A.M., Detective Tully testified that the bus was scheduled to arrive at the terminal at 5:40 A.M. Tully stated that he arrived at the bus station between 5 and 5:30 A.M. and that the bus arrived twenty minutes late at 6 A.M. This discrepancy is of no consequence to this appeal.

cumstances from which the law enforcement officials could have concluded that the information was reliable (the veracity test); and (2) some underlying circumstances which demonstrate a basis of the informant's knowledge (basis of knowledge test). *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985). *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985) (*Upton II*). "These are vital, not merely perfunctory requirements. To justify the intrusion of an arrest and search, the tip must not only come from a credible person, but he must be shown to be relying on something more than a casual rumor or an individual's general reputation." *Commonwealth* v. *Avery*, 365 Mass. 59, 63 (1974).

We first address the reliability prong of the *Aguilar-Spinelli* test, and in so doing, we conclude, as did the judge below, that the informant's reliability was established sufficiently to provide the police with probable cause for the arrest and search. The motion judge found that, on prior occasions, the informant had provided accurate information which had resulted in twenty-five arrests and fifteen convictions of individuals engaged in narcotics trafficking. The informant's past record of supplying credible information satisfies the reliability prong of the *Aguilar-Spinelli* test. See *Commonwealth* v. *Avery*, *supra* (informant's reliability established by six prior occasions to arrest); *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975) (informant's reliability established by one prior occasion on which informant successfully had assisted police investigation).

Addressing the second prong of the *Aguilar-Spinelli* test, we agree with the motion judge that the informant failed to provide information which would have established the basis of his knowledge of the defendant's drug possession. However, "[i]n the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation. The detail provided by the informant in

*Draper* v. *United States*, 358 U.S. 307 (1959), provides a suitable benchmark." *Spinelli* v. *United States*, 393 U.S. 410, 416 (1969). Relying on *Spinelli*, we have stated that independent police corroboration can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* test. *Upton II*, *supra* at 376. *Bottari*, *supra* at 783. *Commonwealth* v. *Upton*, 390 Mass. 562, 571 (1983) *(Upton I)*. *Vynorius*, *supra* at 20. *Commonwealth* v. *Kane*, 362 Mass. 656, 659 (1972). *Commonwealth* v. *Stevens*, 362 Mass. 24, 27-28 (1972). We "give continued credibility to the *Draper* principle, because that approach, carefully applied, is both in the public interest, and consistent with the spirit of *Aguilar-Spinelli*." *Borges*, *supra* at 798 (Hennessey, C.J., concurring).

We conclude that the facts in this case compare favorably with the facts in *Draper*, and that there was sufficient independent police corroboration of the details of the informant's tip to satisfy the *Aguilar-Spinelli* inquiry. In *Draper*, the informant described the defendant as a black male, approximately twenty-seven years old, about five feet eight inches tall, weighing approximately 160 pounds. The informant accurately described the defendant's clothing and stated that he would be carrying a tan colored bag. The informant accurately predicted the train on which the defendant arrived and his fast pace. See *id.* at 313. In this case, the informant accurately described the defendant's approximate age and height, as well as the details of his clothing. The informant also predicted the defendant's arrival time and place.[2] Accordingly, the order suppressing the evidence is reversed and the case is remanded for trial.

*So ordered.*

---

[2] This case is distinguishable from *Commonwealth* v. *Borges*, *supra*, because in this case, the informant described not only the defendant's physical appearance, but also his expected behavior, that is, his arrival in Boston on a particular bus from a particular point of departure. In *Borges*, the informant described only the defendant's physical appearance, and although she had recently been present with the defendant at a particular location, she did not state whether the defendant still could be found there. Indeed, the defendant's whereabouts were determined by a police officer who had seen the defendant five minutes before his arrest. Thus, the informant's tip in *Borges* did not indicate to police any expected behavior. See *Borges*, *supra* at 789.