## COMMONWEALTH *vs.* JOHN H. SWEEZEY.

No. 95-P-173.

Suffolk. January 12, 2000. - September 8, 2000.

Present: JACOBS, GILLERMAN, & BECK, JJ.

*Controlled Substances. Arrest. Search and Seizure,* Arrest, Automobile, Prob-
able cause. *Probable Cause. Constitutional Law,* Search and seizure,
Investigatory stop, Reasonable suspicion, Probable cause. *Practice,
Criminal,* Motion to suppress, Defendant's decision not to testify, Instruc-
tions to jury, Sentence.

At the trial of an indictment for trafficking in cocaine, the judge correctly
denied the defendant's motion to suppress evidence, where the record
demonstrated that police had probable cause to arrest and search the
defendant for possession of a controlled substance. [50-54]
At a criminal trial, the judge correctly denied the defendant's motion for a
mistrial based on the judge's determining, at a sidebar conference rather
than out of the presence of the jury, whether the defendant wished to
testify, where there was no indication that the colloquy was heard by the
jurors, where the judge gave correct limiting instructions to the jury, and
where no prejudice to the defendant was shown. [54]
At the trial of an indictment for trafficking in cocaine, the evidence warranted
an inference that the defendant knew a brown paper bag in his possession
contained a large quantity of a controlled substance, and the judge cor-
rectly instructed the jury that they could infer intent to distribute on the
basis of the weight and purity of the cocaine and that the Commonwealth
was not required to prove that the defendant knew its actual weight. [54-55]

INDICTMENT found and returned in the Superior Court Depart-
ment on December 12, 1991.

The case was tried before *Thomas E. Connolly,* J.

*Francis T. O'Brien, Jr.,* for the defendant.

JACOBS, J. Following the denial of his motion to suppress, the
defendant was convicted by a Superior Court jury of trafficking
in over 200 grams of cocaine.[1] We affirm his conviction, ad-
dressing the four issues raised.

---

[1]The incident for which the defendant was indicted occurred in October,
1991. He filed a motion to suppress, which was denied by a Superior Court

1. *Denial of motion to suppress*. The defendant argues that the police were without probable cause to arrest him or to search for the cocaine, and that the judge erroneously denied his motion to suppress the cocaine and certain statements he made at the time of his arrest.

We summarize the facts from the judge's supported findings,[2] which we supplement with uncontested testimony. See *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 312 (1992). Three officers of the Boston police drug control unit, in plain clothes and in an unmarked car, were conducting a surveillance in a restaurant parking lot at approximately 8:00 P.M. on October 4, 1991. The location was known to them as one where drug transactions frequently took place.[3] Shortly after they observed a man, later identified as the defendant, sitting in a parked Cadillac automobile, a Monte Carlo automobile with two people in the front seat drove into the parking lot and signaled the Cadillac by flashing its lights. The Monte Carlo left the parking lot and the Cadillac immediately followed.

The two cars stopped after traveling a short distance. The officers saw the defendant leave his car, walk to the Monte Carlo, lean in the driver's side window, and engage the driver in conversation. Soon, the defendant returned to his car carrying a paper bag and drove away. The police, believing they had witnessed a drug transaction,[4] followed. When the defendant stopped in a line of cars at a red traffic signal, the officers

judge after a hearing. The defendant entered guilty pleas and was sentenced on the trafficking charge; an assault and battery charge was filed with his assent. He successfully sought a new trial in 1993. Prior to the new trial and following an evidentiary hearing, the defendant's motion to suppress evidence was denied by a different judge who also presided at the trial.

[2]The defendant asserts that the findings of fact are taken verbatim from the previous decision of the judge who denied his motion to suppress and later heard his guilty pleas. See note 1, *supra*. He does not, however, challenge the present decision on the basis of that similarity.

[3]The defendant mistakenly asserts that the finding that the parking lot was known to the officers as an area where drug transactions frequently took place is clearly erroneous. The finding is supported by uncontroverted testimony which the judge could credit.

[4]There was uncontested testimony that the police officers regarded the defendant's conduct as that of a buyer in a drug transaction. This testimony was introduced without thorough disclosure of the officers' inferential process as recommended in *Commonwealth* v. *Kennedy*, 426 Mass. 703, 706 (1998). Nevertheless, the defendant's complaint of "lack of significant prior personal experience" of the officer who principally testified is without merit. There was sufficient evidence of relevant experience to support the judge's reliance on

stopped their vehicle behind the defendant's and approached his car on foot, one at the driver's side, one at the passenger's side, and the third toward the rear. They announced themselves as police. The defendant "tried to get away by pulling out of the line of traffic and in doing so he hit one of the officers with the Cadillac." An oncoming private vehicle blocked the defendant's car, preventing him from getting away. One of the officers removed the defendant from the car and told him he was under arrest for assault and battery on an officer. While the arresting officer was informing the defendant of his Miranda rights, another officer went directly to the passenger's side, opened the door, and made a quick search, then got out and asked the defendant, "Where is it?" The defendant responded, indicating a brown paper bag was on the front seat.[5] The police retrieved the paper bag, which held a clear plastic bag containing a "large white rock substance," later determined to be 304.13 grams of eighty-three percent pure cocaine.

The judge decided alternatively (1) that no seizure occurred prior to the defendant's attempt to get away because the officers "merely approached his car while it was already stopped," and (2) in any event, that an investigative stop of the vehicle would have been valid because the officers had a reasonably articulable suspicion of criminality based on their observations of the defendant made before they attempted to approach him. The judge further concluded that the officers had probable cause to arrest for assault and battery when the defendant hit one of them with the Cadillac and that the search of the Cadillac was valid as a search incident to a lawful arrest.

The defendant argues that the judge erred in concluding that the search for drugs was incident to the arrest for assault and battery on the officer.[6] He correctly claims that G. L. c. 276, § 1,[7] which governs a search incident to an arrest, does not

his testimony, and to cause us to defer to the judge's conclusions grounded thereon to the extent that he determined there was a basis for an investigatory stop. *Ibid.*

[5]The defendant makes no argument concerning the manner in which his statements were obtained. His attempt to suppress the statements is entirely derivative of his attack on his arrest and the search of his vehicle.

[6]The defendant was found not guilty of a charge of assault and battery by means of a dangerous weapon, a result that has no bearing on our probable cause analysis. See *Commonwealth* v. *Sanchez*, 403 Mass. 640, 647 (1988).

[7]In pertinent part, G. L. c. 276, § 1, as inserted by St. 1974, c. 508, states:

support the seizure of the cocaine as incident to his arrest for assault and battery because the cocaine was not an instrumentality of that crime and the entry into his vehicle, in the circumstances, cannot be justified as a search for weapons. See *Commonwealth* v. *Madera*, 402 Mass. 156, 159 (1988) ("Section 1 [of G. L. c. 276] requires the exclusion of evidence [not otherwise admissible] of an unrelated crime found during a search incident to a lawful arrest unless the search was conducted to gather evidence of the first crime or to look for weapons"). He also argues the police impermissibly stopped and arrested him.

There was no error, however, because probable cause to arrest and search the defendant for illegal drug possession existed independently of the probable cause to arrest him for assault and battery.[8] See *Commonwealth* v. *Sanchez*, 403 Mass. 640, 646 n.4 (1988) (although the defendant was arrested for assault and battery, police testimony, if credited, would have supported findings to the effect that there was probable cause to arrest for possession of illegal drugs).

The scenario observed by the officers, filtered through the lens of their experience, amply supports the judge's alternate conclusion that the officers' partial encirclement of the Cadillac was a proper investigative stop and not an unlawful arrest as argued by the defendant. See *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968); *Commonwealth* v. *Riggins*, 366 Mass. 81, 86 (1974) (*Terry* principles are applicable to automobile stops). "A police officer may stop a vehicle in order to conduct a threshold inquiry if he has a reasonable suspicion that the occupants have committed, are committing, or are about to commit, a crime." *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990), quoting from *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Although the conclusory testimony of the officers to the effect that they

---

"A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings."

[8]See *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997) ("An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings").

had witnessed a drug transaction, see note 4, *supra,* may not have revealed their inferential processes sufficiently to establish probable cause to arrest, compare *Commonwealth* v. *Kennedy,* 426 Mass. 703, 705-706 (1998), the actions they observed — the apparent signal to the defendant in an area known for high drug activity, combined with the defendant following the Monte Carlo, interacting with its occupants, and then returning to his car carrying a paper bag — viewed in the light of common sense and the officers' experience, constitute specific, articulable facts supporting a reasonable suspicion of ongoing criminality. While this activity may have been consistent with innocent activity, the conclusion drawn by the officers was substantially more than a hunch. *Id.* at 705 n.2.

The defendant's abrupt attempt to evade the officers while they were approaching and after they identified themselves as police properly may be viewed as elevating the officers' reasonable suspicion of drug activity to the level of probable cause justifying an arrest for possession of illegal drugs.[9] See *Commonwealth* v. *Va Meng Joe,* 425 Mass. 99, 106 (1997) ("Since there is no doubt that the initial stop was justified, events subsequent to the lawful stop, coupled with the factors that supplied the police officers with ample reasonable suspicion to make the investigatory stop, provided the police officers with probable cause to arrest and search the defendant"); 2 LaFave, Search and Seizure § 3.6(e), at 324 (3d ed. 1996) ("[I]f there already exists a significant degree of suspicion concerning a particular person, the flight of that individual upon the approach of the police may be taken into account and may well elevate the pre-existing suspicion up to the requisite Fourth Amendment level of probable cause"). See also *Commonwealth* v. *Ortiz,* 376 Mass. 349, 354 & n.3 (1978).[10]

The existence of probable cause to arrest the defendant for possession of drugs entitled the officers to conduct a search for

---

[9]"Probable cause to arrest exists where the facts and circumstances in the arresting officer's knowledge . . . are sufficient to warrant a person of reasonable caution in believing that an offense has been or is being committed." *Commonwealth* v. *Williams,* 422 Mass. 111, 119 n.11 (1996).

[10]Had the officers acted on the basis of a mere hunch in approaching the Cadillac and identifying themselves, the defendant's reactive flight properly could not be factored into an analysis of the objective criteria for his arrest. See *Commonwealth* v. *Thibeau,* 384 Mass. 762, 764 (1981); *Commonwealth* v. *Stoute,* 422 Mass. 782, 789 (1996). Conversely, once the circumstances establish suspicion sufficient to justify a stop, the subsequent flight of a

drugs notwithstanding that the stated ground for arrest was assault and battery. See *Commonwealth* v. *Lawton*, 348 Mass. 129, 133 (1964) ("If the facts known to the officer reasonably permitted a conclusion that probable cause existed for a [drug charge], the arrest should be treated as legal even though he at first assigned another ground"). See also *Commonwealth* v. *Peters*, 48 Mass. App. Ct. 15, 21-22 (1999). In these circumstances, G. L. c. 276, § 1, permits the search for contraband to extend to the area of the driver's seat,[11] i.e., the area in the car under the defendant's immediate control. See *Commonwealth* v. *Brillante*, 399 Mass. 152, 155 & n.6 (1987) (in similar circumstances, a search of a tote bag under the driver's seat was not prohibited by G. L. c. 276, § 1, because it was for "the purpose of seizing contraband which the [police] had probable cause to believe might be in the tote bag"); *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. 513, 517-518 (1998) ("Probable cause for an arrest, even if not acted upon by a formal arrest, brings with it the 'search incident to arrest' exception to the warrant requirement for a search").

Because the propriety of the search in issue is dependent upon whether there was probable cause to arrest the defendant for possession of drugs immediately *after* he attempted to evade the officers, there is no need to focus upon whether or when a seizure occurred beyond noting that the approach toward the defendant's vehicle by the officers did not constitute an arrest. The test is whether "[t]he degree of intrusiveness on a citizen's personal security, including considerations of time, space, and force, [is] proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). "The pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances." *Commonwealth* v. *Moses*, 408 Mass. at 141. Here, the stop of the defendant's vehicle occurred without police intervention and the officers, in plain clothes, merely approached the stopped vehicle and, without displaying weapons, yelled "police." This moderate investigative initiative was reasonable and proportional in light of the officers' articulable suspicion that the defendant had committed or was committing a crime. Compare *id*. at 141 n.4.

---

defendant may contribute to the objective indicia of criminality. See *id*. at 791.

[11]The bag containing the cocaine was found partially wedged into the middle of the front bench seat of the vehicle.

Contrast *Commonwealth* v. *Stawarz*, 32 Mass. App. Ct. 211, 214 (1992).

2. *Claim of reversible error in calling defendant to sidebar.* Following the testimony of a witness called by the defendant and while the jurors were in the courtroom, the judge conducted a sidebar colloquy directly with the defendant, and determined that he chose not to testify.[12] After the colloquy, the judge asked in open court if there were any further witnesses. Defense counsel answered in the negative and informed the judge that the defendant rested. The prosecutor then informed the judge that the Commonwealth had no rebuttal witnesses. The defendant argues that his motion for a mistrial, filed the next morning, should have been allowed. He claims the jury, having seen him at sidebar at that late juncture of the trial, necessarily inferred he was invoking his right not to testify, resulting in prejudice to him equivalent to that which would have occurred if he had invoked that right in open court.

As requested by the defendant, the judge agreed to give a particular instruction to the jury concerning the right not to testify, and did so. He also instructed that no inference was to be drawn from sidebar discussions. The defendant points to nothing else at trial that would adversely reflect on his decision not to testify. Although the clearly preferred practice is to conduct such a colloquy out of the presence of the jury, in the circumstances where there is no indication the colloquy was heard by the jurors, and it is entirely speculative that the defendant suffered any prejudice from what they observed, we conclude the judge did not abuse his discretion in denying the motion for a mistrial. See *Commonwealth* v. *Kilburn*, 426 Mass. 31, 37-38 (1997).

3. *Claimed instructional error.* The defendant claims it was "inconsistent and unfair" to instruct the jury that they could infer intent to distribute on the basis of weight and purity of the cocaine, but that the Commonwealth was not required to prove the defendant knew its weight. He claims that where the proof

---

[12]At the conclusion of the testimony of the witness, the judge asked defense counsel to come to the sidebar. There, in answer to questions, defense counsel informed the judge that there were no additional witnesses and that the defendant would not testify. The judge then requested the court officers to "ask" the defendant to come to the bench. The defendant participated in a short colloquy at the sidebar and returned to his seat. Responding to defense counsel's complaints, the judge at sidebar stated the defendant's rights would be preserved.

of intent to distribute is entirely circumstantial, proof of knowing and intentional possession of cocaine is required. There is no merit in this argument nor has any authority for it been brought to our attention. In a trafficking prosecution, "the Commonwealth need not prove that the defendant had actual knowledge of the quantity [of cocaine]." *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 453 (1993). It follows that "[t]he judge was not required to instruct the jury that the defendant had to have actual knowledge [of] the quantity of cocaine . . . ." *Ibid*. In any event, the jury reasonably could conclude from the circumstances in which the defendant obtained the brown paper bag and from his handling it that he knew it contained a large quantity of a controlled substance.

4. *Claim of error in applying credits to sentence*. The defendant argues he did not receive proper credit against his sentence for the time he was in custody prior to his conviction. He points out that this issue was raised before the trial judge. The record indicates the judge instructed the defendant to file a motion, and that a motion to "revise and revoke" was filed with affidavits. It does not appear the judge ruled on the motion. Accordingly, our decision in this case is without prejudice to the merits of the defendant's claim for credit for time served, the disposition of which, including any relevant findings, we leave to the Superior Court, acting upon the motion to "revise and revoke."

*Judgment affirmed.*