## Commonwealth *vs.* Jeffrey Lites.

No. 05-P-1119.

Suffolk. June 5, 2006. - December 14, 2006.

Present: Duffly, Cypher, & Katzmann, JJ.

*Constitutional Law,* Search and seizure, Assistance of counsel. *Search and Seizure,* Probable cause, Inevitable discovery. *Practice, Criminal,* Assistance of counsel.

A Superior Court judge properly denied the criminal defendant's motion to suppress physical evidence that police officers found on his person after a search, where the police had probable cause to arrest the defendant based on the defendant's presence in an automobile from which was emanating the odor of freshly burnt marijuana, coupled with the defendant's furtive movements with his hands in the area of his waist (which could have been interpreted by one of the officers as suggestive of an attempt by the defendant to conceal the marijuana that was being smoked) and the defendant's failure initially to heed the officer's command to put his hands on the dashboard [819-820]; further, although the discovery and seizure of the marijuana in the defendant's pockets were the "fruit of the poisonous tree," the marijuana and a weapon and bullets found on the defendant's person were admissible in evidence because an inventory search while booking the defendant would inevitably result in finding the weapon and marijuana [821].

A criminal defendant's attorney was not ineffective in eliciting testimony that included statements that the defendant had made that had been suppressed, where the question that elicited the testimony was part of a strategy to create reasonable doubt by suggesting that the police had planted evidence. [821-822]

Indictments found and returned in the Superior Court Department on February 1, 2001, and August 27, 2001, respectively.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J., and the cases were tried before *Patrick F. Brady,* J.

*Eric J. Weinstein* for the defendant.

*Timothy M. Pomarole,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. A Superior Court judge concluded that the fresh odor of burnt marijuana emanating from the open door of a stopped automobile was a sufficient basis upon which to arrest the defendant, a passenger in the vehicle, and that subsequent interrogation of the defendant in violation of his Miranda rights did not require suppression of physical evidence found on the defendant's person because the items would inevitably have been discovered.[1] The defendant was thereafter convicted by a Superior Court jury of possession of a class D controlled substance (marijuana) in violation of G. L. c. 94C, § 34[2]; possession of a large capacity weapon feeding device in violation of G. L. c. 269, § 10(*m*); possession of ammunition in violation of G. L. c. 269, § 10(*h*); and possession of a firearm in violation of G. L. c. 269, § 10(*a*).[3] The defendant's primary contention in this appeal is that the physical evidence discovered on his person — two bags of marijuana retrieved from his pocket, a Glock 17 semiautomatic gun loaded with a sixteen-round gun clip, and four additional nine millimeter bullets — should have been suppressed because discovery of these items was the result of an unlawful interrogation and the items were fruit of the poisonous tree. He argues that the inevitable discovery doctrine invoked by the motion judge is inapplicable because probable cause to arrest was lacking. We agree with the motion judge that there was probable cause to arrest, but on a ground other than that articulated by her. See *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 51 n.8 (2000), citing *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). The defendant also claims that his trial counsel was ineffective because his questioning of a witness elicited a response that included statements made by the defendant that had been suppressed. We affirm.

*Facts found by the motion judge.* We set forth the essential facts as drawn from the motion judge's findings, including

---

[1]No question is raised in this appeal as to the judge's allowance of the defendant's motion to suppress statements he made when he was questioned, without the benefit of Miranda warnings, after he was told to leave the automobile.

[2]This conviction was placed on file with the defendant's consent, and is not before us. See *Commonwealth* v. *Qualls*, 440 Mass. 576, 577 n.1 (2003).

[3]The defendant pleaded guilty to the second offense portion of the indictment charging illegal possession of a firearm.

uncontested details from the record.[4] The defendant was a passenger in an automobile that was stopped by Sergeant Charles Byrne of the Boston police department on January 10, 2001, at about 12:35 A.M., in a location where the officer had previously made arrests and that he knew to be a high crime area. The stop came about when Sergeant Byrne checked the registration number of the automobile and obtained information that the driver's license of the owner, Danai Britt, had been suspended.[5] As he approached the driver's side of the vehicle, Sergeant Byrne — a sixteen-year veteran of the police department who had been assigned to the drug control unit — detected the smell of marijuana coming from the open window. When the driver identified himself to the officer as Danai Britt,[6] he was taken from the car, arrested, and handcuffed.

Officers David Gavin and John Fitzgerald, both in uniform, were in a marked police vehicle that arrived on the scene as backup. Officer Gavin, who also knew the area they were in to be a high crime area, was at the front of the vehicle when he observed Sergeant Byrne remove the driver and handcuff him, but he did not at that point know the reason for the arrest. Turning his attention to the defendant, who was seated in the front passenger seat, Officer Gavin approached the passenger side of the vehicle. Only the door on the driver's side of the vehicle was open at that time and he could smell a strong odor of burnt marijuana coming from that open door. Officer Gavin could see that the defendant's hands were moving about in the area of his waist in a furtive manner; he could not tell whether the defendant's hands were inside or outside of his pants. Officer Gavin instructed the defendant to place his hands on the dashboard where the officer could see them and repeated the instruction at least one more time when the defendant, who ap-

[4]Notwithstanding the fact that the marijuana conviction was placed on file, we include in our discussion facts pertaining to the marijuana, as they are relevant to our consideration of probable cause.

[5]Sergeant Byrne's attention was drawn to the automobile because it matched the description of an automobile that was believed to be carrying a named individual in possession of a weapon; when he checked the registration, that person's name did not come up.

[6]It was later learned that the driver was not Danai Britt but Kumba Cotton. Cotton was not the person for whom Sergeant Byrne had initially been looking.

peared nervous, failed to heed the command. The defendant questioned the basis for the order, stating to the officer that he was only a passenger, but he eventually complied.

The officer ordered the defendant out of the vehicle. Once he had left the vehicle, Officer Gavin asked the defendant if he had any drugs or weapons on him. The defendant answered that he had a knife and began to reach for his waist area, whereupon Officers Gavin and Fitzgerald grabbed his arms and handcuffed him. They removed from the defendant's pocket a small folding knife, which the officers determined was not illegal to possess. Officer Gavin immediately questioned the defendant again as to whether he had any weapons or drugs on him, and the defendant responded that he had marijuana. The police took one glassine bag of marijuana from the defendant's pocket. The defendant was wearing several layers of clothing; although he was pat frisked, no weapon was found at this time.[7] At no point during this initial encounter were Miranda warnings administered to the defendant.

The officers took the defendant to the police station; when they again asked him if he had any weapons, he told the officers that he had a gun. Officer Fitzgerald retrieved from the defendant's waist area a Glock 17 semiautomatic weapon, with sixteen nine millimeter rounds in the magazine. At the booking desk, the police also recovered four additional nine millimeter rounds from the front pocket of the defendant's pants and an additional bag of marijuana.

*Discussion.* There is no question that the defendant was in custody, even if he had not yet been formally arrested, after he was handcuffed and then asked if "he had anything else on him, any other weapons or drugs" — to which the defendant responded that he had marijuana. See *Commonwealth* v. *Haas*, 373 Mass. 545, 551 (1977). The threshold issue is whether the police had probable cause to arrest the defendant for possession of marijuana prior to the illegal interrogation. See *id.* at 555.

---

[7]Officer Gavin testified that he conducted a patfrisk of only one side of the defendant's body, believing that Officer Fitzgerald had conducted a thorough patfrisk of his entire body, but that a thorough patfrisk was not actually performed. The motion judge found that in performing the patfrisk, the officers "did not do a very good job."

1. *Probable cause to arrest.* In denying the defendant's motion to suppress physical evidence, the motion judge concluded that the fresh odor of marijuana emanating from the car provided probable cause to arrest the defendant and that eventual discovery of the contraband was therefore inevitable. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). See *Commonwealth* v. *Rivera, ante* 362, 364 (2006). Because here there was more than the smell of burnt marijuana — also the defendant's furtive gestures — his motion to suppress physical evidence was properly denied.[8] See *Commonwealth* v. *Frazier,* 410 Mass. 235, 241 (1991), quoting from *Ybarra* v. *Illinois,* 444 U.S. 85, 91 (1979) ("Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person"). See also *Commonwealth* v. *Sampson,* 20 Mass. App. Ct. 970, 971 (1985). Compare *Commonwealth* v. *Fernandez,* 57 Mass. App. Ct. 562, 564-567 (2003).

" '[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense.' *Commonwealth* v. *Storey,* 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). The test is an objective one. . . . 'The officers must have entertained rationally "more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt." ' *Commonwealth* v. *Rivera,* 27 Mass. App. Ct. 41, 45 (1989), quoting *Commonwealth* v. *Bond,* 375 Mass. 201, 210 (1978)."[9] *Commonwealth* v. *Santaliz,* 413 Mass. 238, 241 (1992). We also

---

[8]We therefore need not address whether the smell of burnt marijuana alone was sufficient to create probable cause to arrest the defendant.

[9]Thus, it is not dispositive that mere presence in a car from which police detect the odor of burning contraband is not enough to support a conviction on a charge of possession. See *Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 563, 566-568 (1980).

give due consideration to the reasonable inferences that could be drawn by the officers. See *Commonwealth* v. *Hill*, 49 Mass. App. Ct. 58, 64 (2000), quoting from *Commonwealth* v. *Welch*, 420 Mass. 646, 650 (1995) ("reasonable inferences and common knowledge are appropriate considerations for determining probable cause").

The determination whether probable cause existed must be made without considering the information obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 444-445 (1966). *Commonwealth* v. *Haas*, 373 Mass. at 555.[10] Here, in addition to the distinctive odor of freshly burnt marijuana that was emanating from inside the vehicle as the officers approached, Officer Gavin also observed the defendant making furtive movements with his hands in the area of his waist. The defendant's furtive hand movements reasonably could have been interpreted by the officer as suggestive of an attempt by the defendant to conceal the marijuana that was being smoked. See *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. at 45 n.5 ("defendant's instant move to his pants could count materially toward probable cause"). See also *Commonwealth* v. *Santaliz*, 413 Mass. at 241 (hiding object in waistband a factor). Moreover, the defendant did not initially heed the officer's command that he put his hands on the dashboard. See 2 LaFave, Search & Seizure § 3.6(d), at 351 (4th ed. 2004), quoting from *Sibron* v. *New York*, 392 U.S. 40, 66-67 (1968) ("deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest"). "Thus, to an objective person, evaluating the factual and practical considerations in a nontechnical way, there was a basis reasonably to conclude that illicit activity was occurring," *Commonwealth* v. *Santaliz*, 413 Mass. at 242, and that the defendant had committed or was committing the offense.

---

[10]We are concerned only with whether there was probable cause to arrest the defendant for marijuana possession independent of the suppressed statement that led to the search of his pocket. It is not significant to our analysis that the defendant was not formally arrested until after the contraband was discovered. Compare *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992); *Commonwealth* v. *Cullen*, 62 Mass. App. Ct. 390, 402 n.15 (2004).

2. *Inevitable discovery.* It is not an issue in this appeal, and it appears to be uncontested, that the defendant's statement that he possessed marijuana was elicited in violation of his rights under *Miranda* v. *Arizona*, 384 U.S. 436, 444-445 (1966). As we earlier observed, see note 1, *supra*, the motion judge suppressed the statement. It is also not contested that the police used the statement to locate the marijuana in the defendant's pocket. As such, its discovery and seizure were the "fruit of the poisonous tree," and were also unlawful. *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). However, the motion judge denied the defendant's motion to suppress the physical evidence, concluding that because there was probable cause to arrest without the search for and discovery of the marijuana, a subsequent search of the defendant's person conducted incident to the arrest would have been lawful,[11] and, in any case, discovery of all of the contraband was inevitable. The motion judge found that following the defendant's arrest, he was transported to the police station for booking; observing that an inventory search is performed during booking, the judge concluded that "the inventory search would inevitably result in finding the gun in [the defendant's] waistband . . . and the marijuana."

We agree with the motion judge's implicit determination that based upon the above recited facts, the Commonwealth established, by a preponderance of the evidence, "that the discovery by lawful means was certain as a practical matter." *Commonwealth* v. *DiMarzio*, 436 Mass. 1012, 1013 (2002), citing *Commonwealth* v. *O'Connor*, 406 Mass. 112, 117 (1989).

3. *Ineffective assistance claim.* We discern nothing manifestly unreasonable about defense counsel's apparently tactical decision to question Officer Gavin as to the reason he searched the defendant just prior to booking, thereby eliciting the response, "Because [the defendant] told us he had a weapon." The questioning may be seen as an attempt to implement defense counsel's strategy, which was, at least in part, to create reasonable doubt by suggesting that the contraband had been planted

---

[11]The Commonwealth, noting that police failed to discover the semiautomatic weapon in the defendant's waistband during the initial patfrisk, see note 7, *supra*, does not argue that the contraband would inevitably have been discovered pursuant to a search incident to arrest, and we do not address it.

by the officers, as might be inferred from the timing of the search just prior to booking, following an earlier search during which no weapon had been found.[12] Based on the familiar principles set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), we conclude that defense counsel's representation was not ineffective.

*Conclusion.* Based on the foregoing, we agree that, because there was probable cause to arrest the defendant before he made the statements, discovery of the physical evidence was inevitable and was not rendered inadmissible as fruit of the poisonous tree. There was no error in the denial of the defendant's motion to suppress.

*Judgments affirmed.*

---

[12]In closing argument, defense counsel recited the officer's testimony that he had spent some time "digging around" in the defendant's pockets during the initial search but had missed a second bag of marijuana and the bullets. Defense counsel then argued: "He missed those? He missed the second bag of marijuana? He practically had his whole hand down his pants. How could he miss those? . . . Human error or reasonable doubt? I suggest reasonable doubt." Defense counsel continued in this vein, rhetorically asking, "[W]hy didn't they find the firearm when they took him out of the car and searched him, right then and there? . . . He has pled not guilty because he did not have a firearm that night."